# APPENDIX IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION, BOTH FILED MARCH 6, 2007

**Exhibit A:**   Stipulated Settlement Agreement in *Flores v. Meese*

**Exhibit B:**   December 12, 2001 Stipulation & Order in *Flores v. Meese*

**Exhibit C:**   Declaration of Vanita Gupta, Esq. with Attachments:

Attachment 1: Women's Commission Report: *Locking Up Family Values: The Detention of Immigrant Families*
Attachment 2: February 21, 2007 Letter to United States Attorney Johnny Sutton
Attachment 3: March 1, 2007 Letter to Office of Immigration Litigation, Victor Lawrence

**Exhibit D:**   Declaration of Gouri Bhat, Esq.

**Exhibit E:**   Declaration of John Sargent, M.D.

**Exhibit F:**   Declaration of David R. Blackburn, Ph.D.

**Exhibit G:**   Declaration of Rasa Bunikiene, on behalf of Saule Bunikyte

**Exhibit H:**   Declaration of Egle Baubonyte

**Exhibit I:**   Declaration of Masomeh Alibegi, on behalf of Kevin Yourdkhani

**Exhibit J:**   Declaration of Kevin Yourdkhani

**Exhibit K:**   Declaration of Sherona Verdieu

**Exhibit L:**   Declaration of Raouitee Pamela Puran, on behalf of Wesleyann Emptage

**Exhibit M:**   Declaration of Deka Warsame, on behalf of Mohammed Ibrahim

**Exhibit N:**   Declaration of Aisha Ibrahim

**Exhibit O:**   Declaration of Bahja Ibrahim

**Exhibit P:**   Declaration of Elsa Carbajal, on behalf of Richard Anderson Tome Carbajal and Angelina Juliet Tome Carbajal

# EXHIBIT A

8/12/96

CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Carlos Holguin
Peter A. Schey
256 South Occidental Boulevard
Los Angeles, CA  90057
(213) 388-8693

NATIONAL CENTER FOR YOUTH LAW
Alice Bussiere
James Morales
114 Sansome Street, Suite 905
San Francisco, CA  94104
(415) 453-3307



Attorneys for Plaintiffs

Michael Johnson
Assistant United States Attorney
300 N. Los Angeles St., Rm. 7516
Los Angeles, CA  90012

Allen Hausman
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC  20044

Attorneys for Defendants

Additional counsel listed next page

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JENNY LISETTE FLORES, et al., | ) | Case No. CV 85-4544-RJK(Px) |
| | ) | |
| Plaintiffs, | ) | Stipulated Settlement |
| | ) | Agreement |
| -vs- | ) | |
| | ) | |
| JANET RENO, Attorney General | ) | |
| of the United States, et al., | ) | |
| | ) | |
| Defendants. | ) | |

CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Carlos Holguín
Peter A. Schey
256 South Occidental Boulevard
Los Angeles, CA  90057
(213) 388-8693

NATIONAL CENTER FOR YOUTH LAW
Alice Bussiere
James Morales
114 Sansome Street, Suite 905
San Francisco, CA  94104
(415) 453-3307

Attorneys for Plaintiffs

MICHAEL JOHNSON
Assistant United States Attorney
300 N. Los Angeles St., Rm. 7516
Los Angeles, CA  90012

ALLEN HAUSMAN
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC  20044

Attorneys for Defendants

*Additional counsel listed next page*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JENNY LISETTE FLORES, et al., | ) | Case No. CV 85-4544-RJK(Px) |
| | ) | |
| Plaintiffs, | ) | Stipulated Settlement |
| | ) | Agreement |
| -vs- | ) | |
| | ) | |
| JANET RENO, Attorney General | ) | |
| of the United States, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————————— | ) | |

*Plaintiffs' Additional Counsel:*

ACLU FOUNDATION OF SOUTHERN CALIFORNIA
Mark Rosenbaum
Sylvia Argueta
1616 Beverly Boulevard
Los Angeles, CA  90026
Telephone: (213) 977-9500

STREICH LANG
Susan G. Boswell
Jeffrey Willis
1500 Bank of America Plaza
33 North Stone Avenue
Tucson, AZ  85701
Telephone: (602) 770-8700

*Defendants' Additional Counsel:*

ARTHUR STRATHERN
MARY JAND CANDAUX
Office of the General Counsel
U.S. Immigration & Naturalization Service
425 I St. N.W.
Washington, DC  20536

/ / /

## STIPULATED SETTLEMENT AGREEMENT

WHEREAS, Plaintiffs have filed this action against Defendants, challenging, *inter alia*, the constitutionality of Defendants' policies, practices and regulations regarding the detention and release of unaccompanied minors taken into the custody of the Immigration and Naturalization Service (INS) in the Western Region; and

WHEREAS, the district court has certified this case as a class action on behalf of all minors apprehended by the INS in the Western Region of the United States; and

WHEREAS, this litigation has been pending for nine (9) years, all parties have conducted extensive discovery, and the United States Supreme Court has upheld the constitutionality of the challenged INS regulations on their face and has remanded for further proceedings consistent with its opinion; and

WHEREAS, on November 30, 1987, the parties reached a settlement agreement requiring that minors in INS custody in the Western Region be housed in facilities meeting certain standards, including state standards for the housing and care of dependent children, and Plaintiffs' motion to enforce compliance with that settlement is currently pending before the court; and

WHEREAS, a trial in this case would be complex, lengthy and costly to all parties concerned, and the decision of the district court would be subject to appeal by the losing parties with the final outcome uncertain; and

WHEREAS, the parties believe that settlement of this action is in their best interests and best serves the interests of justice by avoiding a complex, lengthy and costly trial, and subsequent appeals which could last several more years;

NOW, THEREFORE, Plaintiffs and Defendants enter into this Stipulated Settlement Agreement (the Agreement), stipulate that it constitutes a full and complete resolution of the issues raised in this action, and agree to the following:

I       DEFINITIONS

As used throughout this Agreement the following definitions shall apply:

1        1. The term "party" or "parties" shall apply to Defendants and Plaintiffs.  As the term

2  applies to Defendants, it shall include their agents, employees, contractors and/or

3  successors in office.  As the term applies to Plaintiffs, it shall include all class members.

4        2. The term "Plaintiff" or "Plaintiffs" shall apply to the named plaintiffs and all class

   members.

5        3. The term "class member" or "class members" shall apply to the persons defined in

6  Paragraph 10 below.

7        4. The term "minor" shall apply to any person under the age of eighteen (18) years

8  who is detained in the legal custody of the INS.  This Agreement shall cease to apply to any

9  person who has reached the age of eighteen years.  The term "minor" shall not include an

10  emancipated minor or an individual who has been incarcerated due to a conviction for a

11  criminal offense as an adult.  The INS shall treat all persons who are under the age of

12  eighteen but not included within the definition of "minor" as adults for all purposes,

   including release on bond or recognizance.

13        5. The term "emancipated minor" shall refer to any minor who has been determined

14  to be emancipated in an appropriate state judicial proceeding.

15        6. The term "licensed program" shall refer to any program, agency or organization

16  that is licensed by an appropriate State agency to provide residential, group, or foster care

17  services for dependent children, including a program operating group homes, foster homes,

18  or facilities for special needs minors.  A licensed program must also meet those standards

19  for licensed programs set forth in Exhibit 1 attached hereto.  All homes and facilities

20  operated by licensed programs, including facilities for special needs minors, shall be non-

21  secure as required under state law; provided, however, that a facility for special needs

22  minors may maintain that level of security permitted under state law which is necessary for

23  the protection of a minor or others in appropriate circumstances, *e.g.*, cases in which a minor

24  has drug or alcohol problems or is mentally ill.  The INS shall make reasonable efforts to

25  provide licensed placements in those geographical areas where the majority of minors are

26

- 4 -

apprehended, such as southern California, southeast Texas, southern Florida and the northeast corridor.

7. The term "special needs minor" shall refer to a minor whose mental and/or physical condition requires special services and treatment by staff. A minor may have special needs due to drug or alcohol abuse, serious emotional disturbance, mental illness or retardation, or a physical condition or chronic illness that requires special services or treatment. A minor who has suffered serious neglect or abuse may be considered a minor with special needs if the minor requires special services or treatment as a result of the neglect or abuse. The INS shall assess minors to determine if they have special needs and, if so, shall place such minors, whenever possible, in licensed programs in which the INS places children without special needs, but which provide services and treatment for such special needs.

8. The term "medium security facility" shall refer to a facility that is operated by a program, agency or organization licensed by an appropriate State agency and that meets those standards set forth in Exhibit 1 attached hereto. A medium security facility is designed for minors who require close supervision but do not need placement in juvenile correctional facilities. It provides 24-hour awake supervision, custody, care, and treatment. It maintains stricter security measures, such as intensive staff supervision, than a facility operated by a licensed program in order to control problem behavior and to prevent escape. Such a facility may have a secure perimeter but shall not be equipped internally with major restraining construction or procedures typically associated with correctional facilities.

II       SCOPE OF SETTLEMENT, EFFECTIVE DATE, AND PUBLICATION

9. This Agreement sets out nationwide policy for the detention, release, and treatment of minors in the custody of the INS and shall supersede all previous INS policies that are inconsistent with the terms of this Agreement. This Agreement shall become effective upon final court approval, except that those terms of this Agreement regarding placement pursuant to Paragraph 19 shall not become effective until all contracts under the

Program Announcement referenced in Paragraph 20 below are negotiated and implemented. The INS shall make its best efforts to execute these contracts within 120 days after the court's final approval of this Agreement. However, the INS will make reasonable efforts to comply with Paragraph 19 prior to full implementation of all such contracts. Once all contracts under the Program Announcement referenced in Paragraph 20 have been implemented, this Agreement shall supersede the agreement entitled Memorandum of Understanding Re Compromise of Class Action: Conditions of Detention (hereinafter "MOU"), entered into by and between the Plaintiffs and Defendants and filed with the United States District Court for the Central District of California on November 30, 1987, and the MOU shall thereafter be null and void. However, Plaintiffs shall not institute any legal action for enforcement of the MOU for a six (6) month period commencing with the final district court approval of this Agreement, except that Plaintiffs may institute enforcement proceedings if the Defendants have engaged in serious violations of the MOU that have caused irreparable harm to a class member for which injunctive relief would be appropriate. Within 120 days of the final district court approval of this Agreement, the INS shall initiate action to publish the relevant and substantive terms of this Agreement as a Service regulation. The final regulations shall not be inconsistent with the terms of this Agreement. Within 30 days of final court approval of this Agreement, the INS shall distribute to all INS field offices and sub-offices instructions regarding the processing, treatment, and placement of juveniles. Those instructions shall include, but may not be limited to, the provisions summarizing the terms of the Agreement attached hereto as Exhibit 2.

III     CLASS DEFINITION

10. The certified class in this action shall be defined as follows: "All minors who are detained in the legal custody of the INS."

IV     STATEMENTS OF GENERAL APPLICABILITY

11. The INS treats, and shall continue to treat, all minors in its custody with dignity, respect and special concern for their particular vulnerability as minors. The INS shall place

each detained minor in the least restrictive setting appropriate to the minor's age and special needs, provided that such setting is consistent with its interests to ensure the minor's timely appearance before the INS and the immigration courts and to protect the minor's well-being and that of others.  Nothing herein shall require the INS to release a minor to any person or agency whom the INS has reason to believe may harm or neglect the minor or fail to present him or her before the INS or the immigration courts when requested to do so.

V      PROCEDURES AND TEMPORARY PLACEMENT FOLLOWING ARREST

12.  Whenever the INS takes a minor into custody, it shall expeditiously process the minor and shall provide the minor with a notice of rights, including the right to a bond redetermination hearing if applicable.  Following arrest, the INS shall hold minors in facilities that are safe and sanitary and that are consistent with the INS's concern for the particular vulnerability of minors.  Facilities will provide access  to toilets and sinks, drinking water and food as appropriate, medical assistance if the minor is in need of emergency services, adequate temperature control and ventilation, adequate supervision to protect minors from others, and contact with family members who were arrested with the minor.  The INS will segregate unaccompanied minors from unrelated adults.  Where such segregation is not immediately possible, an unaccompanied minor will not be detained with an unrelated adult for more than 24 hours.  If there is no one to whom the INS may release the minor pursuant to Paragraph 14, and no appropriate licensed program is immediately available for placement pursuant to Paragraph 19, the minor may be placed in an INS detention facility, or other INS-contracted facility, having separate accommodations for minors, or a State or county juvenile detention facility.  However, minors shall be separated from delinquent offenders.  Every effort must be taken to ensure that the safety and well-being of the minors detained in these facilities are satisfactorily provided for by the staff. The INS will transfer a minor from a placement under this paragraph to a placement under Paragraph 19 (i) within three (3) days, if the minor was apprehended in an INS district in which a licensed program is located and has space available; or (ii) within five (5) days in all

- 7 -

other cases; except:

1. as otherwise provided under Paragraph 13 or Paragraph 21;

2. as otherwise required by any court decree or court-approved settlement;

3. in the event of an emergency or influx of minors into the United States, in which case the INS shall place all minors pursuant to Paragraph 19 as expeditiously as possible; or

4. where individuals must be transported from remote areas for processing or speak unusual languages such that the INS must locate interpreters in order to complete processing, in which case the INS shall place all such minors pursuant to Paragraph 19 within five (5) business days.

B. For purposes of this Paragraph, the term "emergency" shall be defined as any act or event that prevents the placement of minors pursuant to Paragraph 19 within the time frame provided. Such emergencies include natural disasters (e.g., earthquakes, hurricanes, etc.), facility fires, civil disturbances, and medical emergencies (e.g., a chicken pox epidemic among a group of minors). The term "influx of minors into the United States" shall be defined as those circumstances where the INS has, at any given time, more than 130 minors eligible for placement in a licensed program under Paragraph 19, including those who have been so placed or are awaiting such placement.

C. In preparation for an "emergency" or "influx," as described in Subparagraph B, the INS shall have a written plan that describes the reasonable efforts that it will take to place all minors as expeditiously as possible. This plan shall include the identification of 80 beds that are potentially available for INS placements and that are licensed by an appropriate State agency to provide residential, group, or foster care services for dependent children. The plan, without identification of the additional beds available, is attached as Exhibit 3. The INS shall not be obligated to fund these additional beds on an ongoing basis. The INS shall update this listing of additional beds on a quarterly basis and provide Plaintiffs' counsel with a copy of this listing.

13. If a reasonable person would conclude that an alien detained by the INS is an adult despite his claims to be a minor, the INS shall treat the person as an adult for all purposes, including confinement and release on bond or recognizance. The INS may require the alien to submit to a medical or dental examination conducted by a medical professional or to submit to other appropriate procedures to verify his or her age. If the INS subsequently determines that such an individual is a minor, he or she will be treated as a minor in accordance with this Agreement for all purposes.

VI    GENERAL POLICY FAVORING RELEASE

14. Where the INS determines that the detention of the minor is not required either to secure his or her timely appearance before the INS or the immigration court, or to ensure the minor's safety or that of others, the INS shall release a minor from its custody without unnecessary delay, in the following order of preference, to:

A.    a parent;

B.    a legal guardian;

C.    an adult relative (brother, sister, aunt, uncle, or grandparent);

D.    an adult individual or entity designated by the parent or legal guardian as capable and willing to care for the minor's well-being in (i) a declaration signed under penalty of perjury before an immigration or consular officer or (ii) such other document(s) that establish(es) to the satisfaction of the INS, in its discretion, the affiant's paternity or guardianship;

E.    a licensed program willing to accept legal custody; or

F.    an adult individual or entity seeking custody, in the discretion of the INS, when it appears that there is no other likely alternative to long term detention and family reunification does not appear to be a reasonable possibility.

15. Before a minor is released from INS custody pursuant to Paragraph 14 above, the custodian must execute an Affidavit of Support (Form I-134) and an agreement to:

A.    provide for the minor's physical, mental, and financial well-being;

B.    ensure the minor's presence at all future proceedings before the INS and the immigration court;

C.    notify the INS of any change of address within five (5) days following a move;

D.    in the case of custodians other than parents or legal guardians, not transfer custody of the minor to another party without the prior written permission of the District Director;

E.    notify the INS at least five days prior to the custodian's departing the United States of such departure, whether the departure is voluntary or pursuant to a grant of voluntary departure or order of deportation; and

F.    if dependency proceedings involving the minor are initiated, notify the INS of the initiation of a such proceedings and the dependency court of any immigration proceedings pending against the minor.

In the event of an emergency, a custodian may transfer temporary physical custody of a minor prior to securing permission from the INS but shall notify the INS of the transfer as soon as is practicable thereafter, but in all cases within 72 hours.  For purposes of this Paragraph, examples of an "emergency" shall include the serious illness of the custodian, destruction of the home, etc.  In all cases where the custodian in writing seeks written permission for a transfer, the District Director shall promptly respond to the request.

16.  The INS may terminate the custody arrangements and assume legal custody of any minor whose custodian fails to comply with the agreement required under Paragraph 15.  The INS, however, shall not terminate the custody arrangements for minor violations of that part of the custodial agreement outlined at Subparagraph 15.C above.

17.  A positive suitability assessment may be required prior to release to any individual or program pursuant to Paragraph 14.  A suitability assessment may include such components as an investigation of the living conditions in which the minor would be placed and the standard of care he would receive, verification of identity and employment of the individuals offering support, interviews of members of the household, and a home

- 10 -

visit.  Any such assessment should also take into consideration the wishes and concerns of the minor.

18.  Upon taking a minor into custody, the INS, or the licensed program in which the minor is placed, shall make and record the prompt and continuous efforts on its part toward family reunification and the release of the minor pursuant to Paragraph 14 above.  Such efforts at family reunification shall continue so long as the minor is in INS custody.

VII   INS CUSTODY

19.  In any case in which the INS does not release a minor pursuant to Paragraph 14, the minor shall remain in INS legal custody.  Except as provided in Paragraphs 12 or 21, such minor shall be placed temporarily in a licensed program until such time as release can be effected in accordance with Paragraph 14 above or until the minor's immigration proceedings are concluded, whichever occurs earlier.  All minors placed in such a licensed program remain in the legal custody of the INS and may only be transferred or released under the authority of the INS; provided, however, that in the event of an emergency a licensed program may transfer temporary physical custody of a minor prior to securing permission from the INS but shall notify the INS of the transfer as soon as is practicable thereafter, but in all cases within 8 hours.

20.  Within 60 days of final court approval of this Agreement, the INS shall authorize the United States Department of Justice Community Relations Service to publish in the Commerce Business Daily and/or the Federal Register a Program Announcement to solicit proposals for the care of 100 minors in licensed programs.

21.  A minor may be held in or transferred to a suitable State or county juvenile detention facility or a secure INS detention facility, or INS-contracted facility, having separate accommodations for minors whenever the District Director or Chief Patrol Agent determines that the minor:

A.      has been charged with, is chargeable, or has been convicted of a crime, or is
        the subject of delinquency proceedings, has been adjudicated delinquent, or is

- 11 -

chargeable with a delinquent act; provided, however, that this provision shall not apply to any minor whose offense(s) fall(s) within either of the following categories:

    i.    Isolated offenses that (1) were not within a pattern or practice of criminal activity and (2) did not involve violence against a person or the use or carrying of a weapon (Examples: breaking and entering, vandalism, DUI, etc.  This list is not exhaustive.);

    ii.    Petty offenses, which are not considered grounds for stricter means of detention in any case (Examples: shoplifting, joy riding, disturbing the peace, etc.  This list is not exhaustive.);

As used in this paragraph, "chargeable" means that the INS has probable cause to believe that the individual has committed a specified offense;

B.    has committed, or has made credible threats to commit, a violent or malicious act (whether directed at himself or others) while in INS legal custody or while in the presence of an INS officer;

C.    has engaged, while in a licensed program, in conduct that has proven to be unacceptably disruptive of the normal functioning of the licensed program in which he or she has been placed and removal is necessary to ensure the welfare of the minor or others, as determined by the staff of the licensed program (Examples: drug or alcohol abuse, stealing, fighting, intimidation of others, etc.  This list is not exhaustive.);

D.    is an escape-risk; or

E.    must be held in a secure facility for his or her own safety, such as when the INS has reason to believe that a smuggler would abduct or coerce a particular minor to secure payment of smuggling fees.

22.  The term "escape-risk" means that there is a serious risk that the minor will attempt to escape from custody.  Factors to consider when determining whether a minor is

an escape-risk or not include, but are not limited to, whether:

    A.    the minor is currently under a final order of deportation or exclusion;

    B.    the minor's immigration history includes: a prior breach of a bond; a failure to appear before the INS or the immigration court; evidence that the minor is indebted to organized smugglers for his transport; or a voluntary departure or a previous removal from the United States pursuant to a final order of deportation or exclusion;

    C.    the minor has previously absconded or attempted to abscond from INS custody.

    23. The INS will not place a minor in a secure facility pursuant to Paragraph 21 if there are less restrictive alternatives that are available and appropriate in the circumstances, such as transfer to (a) a medium security facility which would provide intensive staff supervision and counseling services or (b) another licensed program. All determinations to place a minor in a secure facility will be reviewed and approved by the regional juvenile coordinator.

    24A. A minor in deportation proceedings shall be afforded a bond redetermination hearing before an immigration judge in every case, unless the minor indicates on the Notice of Custody Determination form that he or she refuses such a hearing.

    B. Any minor who disagrees with the INS's determination to place that minor in a particular type of facility, or who asserts that the licensed program in which he or she has been placed does not comply with the standards set forth in Exhibit 1 attached hereto, may seek judicial review in any United States District Court with jurisdiction and venue over the matter to challenge that placement determination or to allege noncompliance with the standards set forth in Exhibit 1. In such an action, the United States District Court shall be limited to entering an order solely affecting the individual claims of the minor bringing the action.

    C. In order to permit judicial review of Defendants' placement decisions as provided

in this Agreement, Defendants shall provide minors not placed in licensed programs with a notice of the reasons for housing the minor in a detention or medium security facility. With respect to placement decisions reviewed under this paragraph, the standard of review for the INS's exercise of its discretion shall be the abuse of discretion standard of review. With respect to all other matters for which this paragraph provides judicial review, the standard of review shall be *de novo* review.

D. The INS shall promptly provide each minor not released with (a) INS Form I-770; (b) an explanation of the right of judicial review as set out in Exhibit 6, and (c) the list of free legal services providers compiled pursuant to INS regulation (unless previously given to the minor).

E. Exhausting the procedures established in Paragraph 37 of this Agreement shall not be a precondition to the bringing of an action under this paragraph in any United District Court. Prior to initiating any such action, however, the minor and/or the minors' attorney shall confer telephonically or in person with the United States Attorney's office in the judicial district where the action is to be filed, in an effort to informally resolve the minor's complaints without the need of federal court intervention.

VIII   TRANSPORTATION OF MINORS

25. Unaccompanied minors arrested or taken into custody by the INS should not be transported by the INS in vehicles with detained adults except

A. when being transported from the place of arrest or apprehension to an INS office, or

B. where separate transportation would be otherwise impractical.

When transported together pursuant to Clause (B) minors shall be separated from adults. The INS shall take necessary precautions for the protection of the well-being of such minors when transported with adults.

26. The INS shall assist without undue delay in making transportation arrangements to the INS office nearest the location of the person or facility to whom a minor is to be

- 14 -

released pursuant to Paragraph 14.  The INS may, in its discretion, provide transportation to minors.

IX     TRANSFER OF MINORS

27.  Whenever a minor is transferred from one placement to another, the minor shall be transferred with all of his or her possessions and legal papers; provided, however, that if the minor's possessions exceed the amount permitted normally by the carrier in use, the possessions will be shipped to the minor in a timely manner.  No minor who is represented by counsel shall be transferred without advance notice to such counsel, except in unusual and compelling circumstances such as where the safety of the minor or others is threatened or the minor has been determined to be an escape-risk, or where counsel has waived such notice, in which cases notice shall be provided to counsel within 24 hours following transfer.

X  MONITORING AND REPORTS

28A.  An INS Juvenile Coordinator in the Office of the Assistant Commissioner for Detention and Deportation shall monitor compliance with the terms of this Agreement and shall maintain an up-to-date record of all minors who are placed in proceedings and remain in INS custody for longer than 72 hours.  Statistical information on such minors shall be collected weekly from all INS district offices and Border Patrol stations.  Statistical information will include at least the following: (1) biographical information such as each minor's name, date of birth, and country of birth, (2) date placed in INS custody, (3) each date placed,  removed or released, (4) to whom and where placed, transferred, removed or released, (5) immigration status, and (6) hearing dates.  The INS, through the Juvenile Coordinator, shall also collect information regarding the reasons for every placement of a minor in a detention facility or medium security facility.

B.  Should Plaintiffs' counsel have reasonable cause to believe that a minor in INS legal custody should have been released pursuant to Paragraph 14, Plaintiffs' counsel may contact the Juvenile Coordinator to request that the Coordinator investigate the case and inform Plaintiffs' counsel of the reasons why the minor has not been released.

- 15 -

29.  On a semi-annual basis, until two years after the court determines, pursuant to Paragraph 31, that the INS has achieved substantial compliance with the terms of this Agreement, the INS shall provide to Plaintiffs' counsel the information collected pursuant to Paragraph 28, as permitted by law, and each INS policy or instruction issued to INS employees regarding the implementation of this Agreement.  In addition, Plaintiffs' counsel shall have the opportunity to submit questions, on a semi-annual basis, to the Juvenile Coordinator in the Office of the Assistant Commissioner for Detention and Deportation with regard to the implementation of this Agreement and the information provided to Plaintiffs' counsel during the preceding six-month period pursuant to Paragraph 28. Plaintiffs' counsel shall present such questions either orally or in writing, at the option of the Juvenile Coordinator.  The Juvenile Coordinator shall furnish responses, either orally or in writing at the option of Plaintiffs' counsel, within 30 days of receipt.

30.  On an annual basis, commencing one year after final court approval of this Agreement, the INS Juvenile Coordinator shall review, assess, and report to the court regarding compliance with the terms of this Agreement.  The Coordinator shall file these reports with the court and provide copies to the parties, including the final report referenced in Paragraph 35, so that they can submit comments on the report to the court.  In each report, the Coordinator shall state to the court whether or not the INS is in substantial compliance with the terms of this Agreement, and, if the INS is not in substantial compliance, explain the reasons for the lack of compliance.  The Coordinator shall continue to report on an annual basis until three years after the court determines that the INS has achieved substantial compliance with the terms of this Agreement.

31.  One year after the court's approval of this Agreement, the Defendants may ask the court to determine whether the INS has achieved substantial compliance with the terms of this Agreement.

XI    ATTORNEY-CLIENT VISITS

32.  A.  Plaintiffs' counsel are entitled to attorney-client visits with class members

- 16 -

even though they may not have the names of class members who are housed at a particular location. All visits shall occur in accordance with generally applicable policies and procedures relating to attorney-client visits at the facility in question. Upon Plaintiffs' counsel's arrival at a facility for attorney-client visits, the facility staff shall provide Plaintiffs' counsel with a list of names and alien registration numbers for the minors housed at that facility. In all instances, in order to memorialize any visit to a minor by Plaintiffs' counsel, Plaintiffs' counsel must file a notice of appearance with the INS prior to any attorney-client meeting. Plaintiffs' counsel may limit any such notice of appearance to representation of the minor in connection with this Agreement. Plaintiffs' counsel must submit a copy of the notice of appearance by hand or by mail to the local INS juvenile coordinator and a copy by hand to the staff of the facility.

B. Every six months, Plaintiffs' counsel shall provide the INS with a list of those attorneys who may make such attorney-client visits, as Plaintiffs' counsel, to minors during the following six month period. Attorney-client visits may also be conducted by any staff attorney employed by the Center for Human Rights & Constitutional Law in Los Angeles, California or the National Center for Youth Law in San Francisco, California, provided that such attorney presents credentials establishing his or her employment prior to any visit.

C. Agreements for the placement of minor in non-INS facilities shall permit attorney-client visits, including by class counsel in this case.

D. Nothing in Paragraph 32 shall affect a minor's right to refuse to meet with Plaintiffs' counsel. Further, the minor's parent or legal guardian may deny Plaintiffs' counsel permission to meet with the minor.

XII   FACILITY VISITS

33. In addition to the attorney-client visits permitted pursuant to Paragraph 32, Plaintiffs' counsel may request access to any licensed program's facility in which a minor has been placed pursuant to Paragraph 19 or to any medium security facility or detention facility in which a minor has been placed pursuant to Paragraphs 21 or 23. Plaintiffs'

- 17 -

counsel shall submit a request to visit a facility under this paragraph to the INS district juvenile coordinator who will provide reasonable assistance to Plaintiffs' counsel by conveying the request to the facility's staff and coordinating the visit.   The rules and procedures to be followed in connection with any visit approved by a facility under this paragraph are set forth in Exhibit 4 attached, except as may be otherwise agreed by Plaintiffs' counsel and the facility's staff.  In all visits to any facility pursuant to this Agreement, Plaintiffs' counsel and their associated experts shall treat minors and staff with courtesy and dignity and shall not disrupt the normal functioning of the facility.

XIII  TRAINING

34.  Within 120 days of final court approval of this Agreement, the INS shall provide appropriate guidance and training for designated INS employees regarding the terms of this Agreement.  The INS shall develop written and/or audio or video materials for such training.  Copies of such written and/or audio or video training materials shall be made available to Plaintiffs' counsel when such training materials are sent to the field, or to the extent practicable, prior to that time.

XIV   DISMISSAL

35.  After the court has determined that the INS is in substantial compliance with this Agreement and the Coordinator has filed a final report, the court, without further notice, shall dismiss this action.  Until such dismissal, the court shall retain jurisdiction over this action.

XV    RESERVATION OF RIGHTS

36.  Nothing in this agreement shall limit the rights, if any, of individual class members to preserve issues for judicial review in the appeal of an individual case or for class members to exercise any independent rights they may otherwise have.

XVI   NOTICE AND DISPUTE RESOLUTION

37.  This paragraph provides for the enforcement, in this District Court, of the

- 18 -

provisions of this Agreement except for claims brought under Paragraph 24.  The parties

shall meet telephonically or in person to discuss a complete or partial repudiation of this

Agreement or any alleged non-compliance with the terms of the Agreement, prior to

bringing any individual or class action to enforce this Agreement.  Notice of a claim that

defendants have violated the terms of this Agreement shall be served on plaintiffs

addressed to:

CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Carlos Holguín
Peter A. Schey
256 South Occidental Boulevard
Los Angeles, CA  90057

NATIONAL CENTER FOR YOUTH LAW
Alice Bussiere
James Morales
114 Sansome Street, Suite 905
San Francisco, CA  94104

and on Defendants addressed to:

Michael Johnson
Assistant United States Attorney
300 N. Los Angeles St., Rm. 7516
Los Angeles, CA  90012

Allen Hausman
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC  20044

XVII   PUBLICITY

38.  Plaintiffs and Defendants shall hold a joint press conference to announce this

Agreement.  The INS shall send copies of this Agreement to social service and voluntary

agencies agreed upon by the parties, as set forth in Exhibit 5 attached.  The parties shall

pursue such other public dissemination of information regarding this Agreement as the

- 19 -

parties shall agree.

XVIII   ATTORNEYS FEES AND COSTS

39.  Within 60 days of final court approval of this Agreement, Defendants shall pay to Plaintiffs the total sum of $_____, in full settlement of all attorneys' fees and costs in this case.

XIX   TERMINATION

40.  All terms of this Agreement shall terminate the earlier of five years from the date of final court approval of this Agreement or three years after the court determines that the INS is in substantial compliance with the Agreement, except the following: the INS shall continue to house the general population of minors in INS custody in facilities that are state-licensed for the care of dependent minors.

XX   REPRESENTATIONS AND WARRANTY

41.  Counsel for the respective parties, on behalf of themselves and their clients, represent that they know of nothing in this Agreement that exceeds the legal authority of the parties or is in violation of any law.  Defendants' counsel represent and warrant that they are fully authorized and empowered to enter into this Agreement on behalf of the Attorney General, the United States Department of Justice, and the Immigration and Naturalization Service, and acknowledge that Plaintiffs enter into this Agreement in reliance on such representation.  Plaintiffs' counsel represent and warrant that they are fully authorized and empowered to enter into this Agreement on behalf of the Plaintiffs, and acknowledge that Defendants enter into this Agreement in reliance on such representation. The undersigned, by their signatures on behalf of the Plaintiffs and Defendants, warrant that upon execution of this Agreement in their representative capacities, their principals, agents, and successors of such principals and agents shall be fully and unequivocally bound hereunder to the full extent authorized by law.


Dated:_____      _____

XIX    TERMINATION

40.  All terms of this Agreement shall terminate the earlier of five years after the date of final court approval of this Agreement or three years after the court determines that the INS is in substantial compliance with this Agreement, except that the INS shall continue to house the general population of minors in INS custody in facilities that are licensed for the care of dependent minors.

XX     REPRESENTATIONS AND WARRANTY

41.  Counsel for the respective parties, on behalf of themselves and their clients, represent that they know of nothing in this Agreement that exceeds the legal authority of the parties or is in violation of any law.  Defendants' counsel represent and warrant that they are fully authorized and empowered to enter into this Agreement on behalf of the Attorney General, the United States Department of Justice, and the Immigration and Naturalization Service, and acknowledge that Plaintiffs enter into this Agreement in reliance on such representation.  Plaintiffs' counsel represent and warrant that they are fully authorized and empowered to enter into this Agreement on behalf of the Plaintiffs, and acknowledge that Defendants enter into this Agreement in reliance on such representation.  The undersigned, by their signatures on behalf of the Plaintiffs and Defendants, warrant that upon execution of this Agreement in their representative capacities, their principals, agents, and successors of such principals and agents shall be fully and unequivocally bound hereunder to the full extent authorized by law.

For Defendants:  Signed: _Loris Meissner_  Title: Commissioner, INS

Dated: _9/16/96_

For Plaintiffs:  Signed: per next page ___  Title: _____

Dated: _____

22

The foregoing stipulated settlement is approved as to form and content:

CENTER FOR HUMAN RIGHTS AND
CONSTITUTIONAL LAW
Carlos Holguin
Peter Schey

NATIONAL CENTER FOR YOUTH LAW
Alice Bussiere
James Morales

ACLU FOUNDATION OF SOUTHERN CALIFORNIA
Mark Rosenbaum
Sylvia Argueta

STEICH LANG
Susan G. Boswell
Jeffery Willis

Date: 1/13/97                    By

Date: 11/13/96                   By

23

# EXHIBIT B

LODGED

CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Carlos Holguín
Peter A. Schey
Charles Song
256 South Occidental Boulevard
Los Angeles, CA 90057
Telephone: (213) 388-8693; Fax: (213) 386-9484

LATHAM & WATKINS
Steven Schulman
555 Eleventh St., NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2184

*Of counsel:*

YOUTH LAW CENTER
Alice Bussiere
417 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone: (415) 543-3379 x 3903

*Attorneys for plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JENNY LISETTE FLORES, et al , | ) | Case No. CV 85-4544-RJK(Px) |
| | ) | |
| Plaintiffs, | ) | STIPULATION EXTENDING |
| | ) | SETTLEMENT AGREEMENT AND FOR |
| -vs- | ) | OTHER PURPOSES; AND ORDER |
| | ) | THEREON |
| JANET RENO, Attorney General | ) | |
| of the United States, et al | ) | |
| | ) | |
| Defendants | ) | |

/ / /

1

2     IT IS HEREBY STIPULATED by and between the parties as follows:

3        1. Paragraph 40 of the Stipulation filed herein on January 17, 1997, is modified to read

4     as follows:

5        "All terms of this Agreement shall terminate ~~the earlier of five years after the date of~~

6        ~~final court approval of this Agreement or three years after the court determines that~~

7        ~~the INS is in substantial compliance with this Agreement,~~ *45 days following defendants'*

8        *publication of final regulations implementing this Agreement.*

9        ~~except that~~ *Notwithstanding the foregoing,* the INS shall continue to house the general

10       population of minors in INS custody in facilities that are state-licensed for the care of

11       dependent minors."

12    / / /

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2  For a period of six months from the date this Stipulation is filed, plaintiffs shall not initiate legal proceedings to compel publication of final regulations implementing this Agreement  Plaintiffs agree to work with defendants cooperatively toward resolving disputes regarding compliance with the Settlement. The parties agree to confer regularly no less frequently than once monthly for the purpose of discussing the implementation of and compliance with the settlement agreement  However, nothing herein shall require plaintiffs to forebear legal action to compel compliance with this Agreement where plaintiff class members are suffering irreparable injury

Dated: December 7, 2001.

CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Carlos Holguín
Peter A  Schey

LATHAM & WATKINS
Steven Schulman

YOUTH LAW CENTER
Alice Bussiere

_____
Carlos Holguín, for plaintiffs.

Dated: December 7  2001

Arthur Strathern
Office of the General Counsel
U S  Immigration & Naturalization Service

_____
Arthur Strathern, for defendants
Per tax authorization

IT IS SO ORDERED

Dated: December _____ 2001

_____
UNITED STATES DISTRICT JUDGE

1      2  For a period of six months from the date this Stipulation is filed, plaintiffs shall not

2  initiate legal proceedings to compel publication of final regulations implementing this

3  Agreement. Plaintiffs agree to work with defendants cooperatively toward resolving

4  disputes regarding compliance with the Settlement  The parties agree to confer regularly no

5  less frequently than once monthly for the purpose of discussing the implementation of and

6  compliance with the settlement agreement. However, nothing herein shall require plaintiffs

7  to forebear legal action to compel compliance with this Agreement where plaintiff class

8  members are suffering irreparable injury.

9  Dated: December 7, 2001.

    CENTER FOR HUMAN RIGHTS &
    CONSTITUTIONAL LAW
    Carlos Holguin
    Peter A. Schey

    LATHAM & WATKINS
    Steven Schulman

    YOUTH LAW CENTER
    Alice Bussiere

_____
Carlos Holguin, *for plaintiffs*

18  Dated: December 7, 2001

    Arthur Strathern
    Office of the General Counsel
    U.S. Immigration & Naturalization Service

_____
Arthur Strathern, *for defendants*
Per fax authorization

25  IT IS SO ORDERED

26  Dated: December 7, 2001

_____
UNITED STATES DISTRICT JUDGE

- 3 -

PROOF OF SERVICE BY MAIL

I, Carlos Holguin, declare and say as follows:

1   I am over the age of eighteen years and am not a party to this action.  I am employed in the County of Los Angeles, State of California.  My business address is 256 South Occidental Boulevard, Los Angeles, California 90057, in said county and state

2   On December 7, 2001, I served the attached STIPULATION on defendants in this proceeding by placing a true copy thereof in a sealed envelope addressed to their attorneys of record as follows:

> Arthur Strathern
> Office of the General Counsel
> U.S. Immigration & Naturalization Service
> 425 I St. N.W.
> Washington, DC  20536

and by then sealing said envelope and depositing the same, with postage thereon fully prepaid, in the mail at Los Angeles, California; that there is regular delivery of mail between the place of mailing and the place so addressed.

I declare under penalty of perjury that the foregoing is true and correct

Executed this 7th day of December, 2001, at Los Angeles, California

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

## DECLARATION OF VANITA GUPTA

Vanita Gupta, pursuant to 28 U.S.C. § 1746, makes the following declaration under penalty of perjury:

1. I am an attorney with the Racial Justice Program of the American Civil Liberties Union Foundation, which represents Wesleyann Emptage; Aisha Ibrahim; Bahja Ibrahim; Mohammed Ibrahim; Angelina Juliet Tome Carbajal; Richard Anderson Tome Carbajal; Kevin Yourdkhani; Egle Baubonyte; Saule Bunikyte; and Sherona Verdieu.  I make this Declaration in connection with the Complaints and accompanying motions filed on March 6, 2007 by each of the aforementioned individuals.

2. Attached hereto as Attachment 1 is a true and correct copy of a report issued in February 2007 by the Women's Commission for Refugee Women and Children and the Lutheran Immigration and Refugee Service.  The report, entitled *Locking Up Family Values: The Detention of Immigrant Families*, contains an assessment of the conditions of confinement at the T. Don Hutto Family Residential Center in Taylor, Texas ("Hutto"), and discusses some alternatives to detention that are available to Immigration and Customs Enforcement.

3. Attached hereto as Attachment 2 is a true and correct copy of a February 21, 2007 letter from myself to Johnny Sutton, United States Attorney for the Western District of Texas. The letter, which was sent pursuant to ¶ 24(E) of the Stipulated Settlement Agreement in the case of *Flores v. Meese*, No. 85-4544 (C.D. Cal.) ("*Flores* Settlement"), sought informal resolution of the matter that is now the subject of litigation before this Court.

4. Attached hereto as Attachment 3 is a true and correct copy of a March 1, 2007 letter from myself to Victor Lawrence, an attorney with the Department of Justice, Office of Immigration Litigation.  The letter, which was sent pursuant to ¶ 24(E) of the *Flores* Settlement, sought informal resolution of the matter that is now the subject of litigation before this Court.

5. I have received no substantive response to the concerns raised in either the February 21, 2007 letter, or the March 1, 2007 letter.


I declare under penalty of perjury that the foregoing is true and correct.


EXECUTED on March 6, 2007


Vanita Gupta, Esq.

# EXHIBIT C:

# ATTACHMENT 1





# LOCKING UP FAMILY VALUES:

## The Detention of Immigrant Families



Women's Commission for Refugee Women and Children
Lutheran Immigration and Refugee Service

February 2007

 

Lutheran Immigration and Refugee Service
700 Light Street
Baltimore, MD 21230
tel. 410.230.2700
fax. 410.230.2890
lirs@lirs.org
www.lirs.org

Women's Commission for Refugee Women and Children
122 East 42nd Street
New York, NY 10168-1289
tel. 212.551.3115
fax. 212.551.3180
wcrwc@womenscommission.org
www.womenscommission.org

© 2007 by Women's Commission for Refugee Women and Children
All rights reserved.

ISBN: 1-58030-058-8

# Mission Statements

Since 1939, **Lutheran Immigration and Refugee Service** has worked with service, advocacy and educational partners nationwide to bring new hope and new life to America's newcomers. LIRS resettles refugees, protects unaccompanied refugee and migrant children, including victims of trafficking, advocates for fair and just treatment of asylum seekers, seeks alternatives to detention for those who are incarcerated during their immigration proceedings and stands for unity for families fractured by unfair laws. LIRS is a cooperative agency of the Evangelical Lutheran Church of America, the Lutheran Church Missouri Synod and the Latvian Evangelical Lutheran Church in America. With initiative and stewardship, LIRS seeks creative solutions for uprooted people regardless of race, ethnicity or religious beliefs.

The **Women's Commission for Refugee Women and Children** works to improve the lives and defend the rights of refugee* women, youth and children. The Women's Commission works in consultation with refugee women, youth and children. Through our advocacy, we ensure that their voices are heard in the halls of power and taken into account in the decision-making process. Our work contributes to long-term solutions, thereby lessening the likelihood of continuing cycles of conflict and displacement. The Women's Commission is legally part of the International Rescue Committee (IRC), a non-profit 501(c)(3) organization. The Women's Commission receives no direct financial support from the IRC.

\* The term refugee here includes refugees, internally displaced persons, returnees and asylum seekers.

*Cover photos: Left, play area at Hutto. Right, note slipped to a member of our delegation at Hutto.*

# Table of Contents

Executive Summary ........................................................................................................... 1

I. Introduction ................................................................................................................... 4
II. Background ................................................................................................................... 5
    Family Detention: Historical Context ...................................................................... 5
    Standards of Care and Custody .............................................................................. 6
        Family Detention Standards .......................................................................... 6
        *Flores* Settlement ....................................................................................... 7
        Detention Standards ..................................................................................... 8
        Accountability and Oversight........................................................................ 9
III. Family Detention in the International Context ........................................................... 10
IV. Conditions of Confinement ....................................................................................... 11
        Facilities ...................................................................................................... 11
        Physical Setting ........................................................................................... 12
        Processing.................................................................................................... 14
        Accommodations......................................................................................... 16
        Food Service ................................................................................................ 19
        Medical Care ............................................................................................... 20
        Mental Health Care ..................................................................................... 23
        Education..................................................................................................... 25
        Recreation.................................................................................................... 26
        Discipline .................................................................................................... 28
        Access to Counsel ....................................................................................... 31
        Telephone Access......................................................................................... 34
        Visitation and Spiritual Support ................................................................... 34
V. Conclusions ............................................................................................................... 36
VI. Recommendations .................................................................................................... 45

Appendix A: Methodology.............................................................................................. 48
Appendix B: Family Detention and International Law .................................................... 49
Appendix C: Family Detention Practice in the International Context............................... 51
        Britain: Detention of Families and Children ................................................. 51
        Germany: Immigration Detention ................................................................ 52
        Australia: Community Detention .................................................................. 52
        Sweden: A Model for Others?...................................................................... 53
Appendix D: Alternatives to Detention........................................................................... 54
    Executive Summary of the UNHCR Report on Alternatives to
        Detention of Asylum Seekers and Refugees................................................. 54
        ICE Intensive Supervision Appearance Program (ISAP)............................... 56
        Legal Orientation Program........................................................................... 60
Appendix E: Facility Comparison Chart .......................................................................... 63
Appendix F: Acknowledgements ..................................................................................... 65

# Commonly Used Abbreviations

| | |
|---|---|
| ACA | American Correctional Association |
| ALDF | Adult Local Detention Facilities |
| CBP | U.S. Customs and Border Protection |
| CIS | U.S. Citizenship and Immigration Service |
| CCA | Corrections Corporation of America |
| DHS | U.S. Department of Homeland Security |
| EOIR | Executive Office for Immigration Review |
| ICE | U.S. Immigration and Customs Enforcement |
| IGSA | Intergovernmental Service Agreement |
| IJ | Immigration Judge |
| INS | Immigration and Naturalization Service |
| LIRS | Lutheran Immigration and Refugee Service |
| NCCHC | National Commission on Correctional Health Care |
| NGO | Nongovernmental Organization |
| OIG | Office of Inspector General |
| ORR | Office of Refugee Resettlement |
| PHS | Public Health Service |

# Executive Summary

Dominica[1] is a Honduran asylum seeker detained with her two children at the T. Don Hutto Residential Center in Taylor, Texas. Nelly is nine years old and Alice is three. At night they all sleep together in the bottom bunk of their jail cell because they are afraid. Nelly says, "If you are not good, they will take you away from your mom."[2]

Dominica is almost seven months pregnant. The doctor has told her for months that her baby is underweight. He has told her she needs to eat more. But she says she can't. "The food doesn't work here. I cannot eat it." She explains that the food is "difficult to eat" and she doesn't get much time. "There are only a maximum of 20 minutes to eat and I have to feed my children first. They do not eat quickly. You are not allowed to take food out of the cafeteria, even if you haven't had time to finish. Something like bread or an apple…they take it away. It is so sad to throw something like that away because you could not eat fast enough."

Dominica requested parole over two months ago. Her mother is a legal permanent resident and she has passed a credible fear interview. She still has not a received a response to her request. She is afraid that she will have her baby in jail.[3]

Dominica's story is just one of countless tales from detained immigrant families. A small child's note, slipped into the hand of a member of our delegation, sums up their pleas:

**"Help us and ask us questions."**

On any given day the U.S. government has the capacity to detain over 600 men, women and children apprehended as family units along the U.S. border and within the interior of the country. The detention of families expanded dramatically in 2006 with the opening of the new 512-bed T. Don Hutto Residential Center. Although Hutto has become the centerpiece of a major expansion of immigration detention in America, it builds on and further institutionalizes many of the practices established at the smaller Berks Family Shelter Care Facility in Leesport, Pa., where U.S. Immigration and Customs Enforcement (ICE) has detained a small number of families since 2001.

The recent increase in family detention represents a major shift in the U.S. government's treatment of families in immigration proceedings. Prior to the opening of Hutto, the majority of families were either released together from detention or separated from each other and detained individually. Children were placed in the custody of the Office of Refugee Resettlement (ORR) Division for Unaccompanied Children's Services, and parents were detained in adult facilities.

Congress discovered this and took immediate action to rectify



*Prior to the opening of Hutto, detained children were separated from their parents and placed in the custody of the ORR Division for Unaccompanied Children's Services.*

---

[1] All names and some identifying characteristics of detainees and former detainees have been changed throughout this report.
[2] Nelly, interview by Michelle Brané, T. Don Hutto Residential Center, December 4, 2006.
[3] Dominica, interview by Michelle Brané, T. Don Hutto Residential Center, December 4, 2006.

it, in keeping with America's tradition of promoting family values. It directed ICE to stop separating families and either to place them in alternative programs or to detain them together in nonpenal, homelike settings. Such Congressional directives were intended to preserve and protect the role of the family as the fundamental unit in our society. However, ICE chose to develop a penal detention model that is fundamentally anti-family and un-American.

Lutheran Immigration and Refugee Service and the Women's Commission for Refugee Women and Children felt it vital to examine the implications of this expanding penal approach to family detention in order to inform the development of policy and practice that serves the best interests of children and families. To that end we visited both the T. Don Hutto Residential Center and the Berks Family Shelter Care Facility and talked with detained families as well as former detainees. What we found was disturbing:

- Hutto is a former criminal facility that still looks and feels like a prison, complete with razor wire and prison cells.
- Some families with young children have been detained in these facilities for up to two years.
- The majority of children detained in these facilities appeared to be under the age of 12.
- At night, children as young as six were separated from their parents.
- Separation and threats of separation were used as disciplinary tools.
- People in detention displayed widespread and obvious psychological trauma. Every woman we spoke with in a private setting cried.
- At Hutto pregnant women received inadequate prenatal care.
- Children detained at Hutto received one hour of schooling per day.
- Families in Hutto received no more than twenty minutes to go through the cafeteria line and feed their children and themselves. Children were frequently sick from the food and losing weight.
- Families in Hutto received extremely limited indoor and outdoor recreation time and children did not have any soft toys.

Yet not everything we saw reflected a failure of the system. At the Berks facility:

- The educational system was appropriate to children's developmental needs.
- Families were permitted to participate in field trips.
- Children were able to participate in arts and crafts activities.
- Families enjoyed ample outdoor recreation time in an open, grassy area.

But despite these few positives, the system of family detention is overwhelmingly inappropriate for families.

- Both settings strip parents of their role as arbiter and architect of the family unit.
- Both facilities place families in settings modeled on the criminal justice system.
- There are no licensing requirements for family detention facilities because there is no precedent for family detention in the United States.
- There are no standards for family detention, but both facilities violated various aspects of existing standards for the treatment of unaccompanied children and adults in immigration proceedings.

Neither facility provides an acceptable model for addressing the reality of the presence of families in our immigration system. Although there is precedent in the adult detention system for the use of alternatives to detention and other pre-hearing release systems,[4] ICE has unfortunately made no effort to expand these

---

[4]   See Appendix D, "UNHCR Report on Alternatives to Detention of Asylum Seekers and Refugees."

programs to include families.

Based upon these findings, we recommend the following systemic changes to the U.S. government's treatment of families in immigration proceedings:

- Discontinue the detention of families in prison-like institutions.
- Parole asylum seekers in accordance with international standards and DHS's own policy guidelines
- Expand parole and release options for apprehended families.
- Implement alternatives to detention for families not eligible for parole or release.
- House families not eligible for parole or release in appropriate, nonpenal, homelike facilities.
- Expand public-private partnerships to provide legal information and *pro bono* legal access for all detained families, and to implement alternative programs.

**For a full list of recommendations, see page 45.**